**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Jezerinac v. Dioun*, **Slip Opinion No. 2022-Ohio-509.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-509

JEZERINAC ET AL., APPELLEES, *v*. DIOUN ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Jezerinac v. Dioun*, Slip Opinion No. 2022-Ohio-509.]**

*Appellate procedure—App.R. 26(A)(1)(c)—Motion for reconsideration of court-of-appeals decision—Requirement under Article IV, Section 3(A) of the Ohio Constitution that three judges "participate in the hearing and disposition" of each case includes any decision made on an application for reconsideration—When a member of an original appellate panel leaves the bench before a decision on a motion for reconsideration, the departing judge may be replaced by a new judge on the panel that is reconsidering the matter.*

(No. 2020-0743—Submitted September 7, 2021—Decided February 24, 2022.)

APPEAL from the Court of Appeals for Franklin County,

No. 18AP-479, 2020-Ohio-587.

_____

**DEWINE, J.**

**{¶ 1}** Ohio's appellate rules permit a party to ask a court of appeals to reconsider a prior decision and provide that the request "shall be considered by the panel that issued the original decision." App.R. 26(A)(1)(c). But what happens when a member of the original panel leaves the bench? May the departing judge be replaced by a new judge on the panel that is reconsidering the matter?

**{¶ 2}** We hold that he may. A panel exists independently of the judges sitting on it at any given time. Accordingly, for purposes of reconsideration, the panel remains "the panel that issued the original decision" when a vacancy on a panel is filled by a successor. We therefore affirm the judgment of the Tenth District Court of Appeals.

## I. A Decision, a Retirement, and A New Decision on Reconsideration

**{¶ 3}** This litigation centers around a soured business relationship between two partners, Ronald M. Jezerinac and Mo M. Dioun,[1] who owned Barley's Brewing Company in Columbus. After appointing a receiver to manage the dissolution of the business, the trial court issued a decision that ordered the business be sold to Jezerinac.

**{¶ 4}** On appeal, the Tenth District Court of Appeals reversed the trial court's decision and ordered the receiver to entertain offers from all interested bidders. 2019-Ohio-726, 132 N.E.3d 238 ("*Jezerinac I*"). The case was heard by Judges Brunner, Horton, and Klatt. Judges Brunner and Horton concurred; Judge Klatt dissented. After the case was argued, but before the decision issued, Judge Horton announced his impending resignation. Judge Horton's resignation became effective on February 28, 2019, the same day the decision in *Jezerinac I* was released.

---

1. There are several parties on each side of this case as well as an intervenor that sides with appellees. For ease of reference, this opinion will refer to each side, and any related entities, by using the names of the principals: Jezeranic and Dioun.

{¶ 5} On March 11, 2019, Jezerinac timely filed an application for reconsideration. On March 21, 2019, the governor appointed Frederick Nelson to fill Judge Horton's seat.

{¶ 6} In opposing reconsideration, Dioun argued that Judge Nelson should not participate in the reconsideration decision, because he did not sit on the original panel. The Tenth District disagreed, concluding that Dioun's position was contrary to "long-standing precedent and practice" and that "[w]hen a judge is replaced on a panel, the successor judge has the same responsibilities as his or her predecessor." 2020-Ohio-587, 152 N.E.3d 430, ¶ 8, citing *Holland v. State*, 27 Ohio St.2d 77, 78, 271 N.E.2d 819 (1971). With Judge Nelson participating, the panel concluded that because *Jezerinac I* contained "obvious errors," reconsideration was warranted. *Id.* at ¶ 4. The panel vacated the prior decision in *Jezerinac I* and issued a new decision affirming the judgment of the trial court. This time the panel majority consisted of Judges Nelson and Klatt, with Judge Brunner dissenting. Dioun sought reconsideration based upon Judge Nelson's participation, but the Tenth District denied the application.

{¶ 7} Having accepted discretionary review, we now turn to the question before us: is a panel "the panel that issued the original decision" when a member of that panel has resigned, retired, or died and is then replaced by his or her lawfully appointed successor? We hold that it is.

## II. The Panel that Issued the Original Decision

{¶ 8} Dioun contends that App.R. 26(A)(1)(c)'s requirement that reconsideration "shall be considered by the panel that issued the original decision" mandates that only the three individual judges who sat on the panel that issued the initial decision may participate in reconsideration.

{¶ 9} Under normal circumstances, of course, the panel members that heard the original case would consider any application for reconsideration. The plain terms of App.R. 26(A)(1)(c) make this clear. The question though is what happens

when one of the original panel members is unavoidably unavailable—for example, because of death, recusal, or as happened in this case, resignation?

{¶ 10} Dioun urges us to declare that App.R. 26(A)(1)(c)'s "same panel" language forbids the appointment of a replacement judge in the event of an original panel member is unable to hear a case. In Dioun's view, when a panel member dies or retires, the decision on reconsideration should be left to the remaining two panel members. If the remaining two panel members concur, then they may issue a decision. If not, the application for reconsideration fails for lack of a majority. This result, Dioun maintains, is required by the text of the rule because replacing any panel member necessarily creates a new and distinct panel from "the panel that issued the original decision."

{¶ 11} We are not convinced. Filling a vacancy on an appellate panel is required by the Ohio Constitution and consistent with our long-standing view that judicial authority rests with the judicial office and not with the individual filling that office. Indeed, our appellate rules recognize that a panel exists independently from the three individuals sitting on it and permit a judge's replacement when necessary.

*A. The Ohio Constitution requires three judges to participate in the hearing and disposition of each case*

{¶ 12} At the outset, Dioun's argument faces a big hurdle. Article IV, Section 3(A) of the Ohio Constitution, which provides for the organization of the courts of appeals, states:

> The state shall be divided by law into compact appellate districts in each of which there shall be a court of appeals consisting of three judges. Laws may be passed increasing the number of judges in any district wherein the volume of business may require such additional judge or judges. In districts having additional

4

judges, *three judges shall participate in the hearing and disposition of each case.*

(Emphasis added.) We have read this provision to "mandate[] that appellate cases shall be heard by *at least* three judges to ensure that each case is properly reviewed." (Emphasis sic.) *McFadden v. Cleveland State Univ.*, 120 Ohio St.3d 54, 2008-Ohio-4914, 896 N.E.2d 672, ¶ 14.

{¶ 13} Dioun concedes that the Constitution requires that three judges must hear and dispose of each case, but he contends that this requirement was met when the initial panel issued its decision in *Jezerinac I*. The problem with this argument is that where a motion for reconsideration is filed, there is no final "disposition" of the case until the court of appeals rules on a timely-filed motion for reconsideration. Our rules explicitly provide a right to file for reconsideration, *see* App.R. 26(A)(1), and an application for reconsideration tolls the time for filing a jurisdictional appeal to this court, S.Ct.Prac.R. 7.01(5). Thus, a case has not been "disposed" of until the court of appeals rules on the reconsideration application. As a consequence, the constitutional requirement that three judges must "participate in the hearing and disposition" of each case necessarily includes any decision made on an application for reconsideration.

{¶ 14} Indeed, adoption of Dioun's position would unfairly disadvantage some litigants. Appellate Rule 26(A) provides a right to seek reconsideration. But, under Dioun's view, when a member of the original panel has left the bench, the only way reconsideration may be granted is if both remaining judges concur in granting reconsideration. If the panel is deadlocked one-to-one, the application fails. That means that when a judge has left the bench, a reconsideration applicant must convince 100 percent of the remaining judges, while other reconsideration applicants need only convince two thirds of a panel to grant reconsideration. Such

a result not only presents constitutional problems but also is at odds with basic conceptions of procedural fairness.

{¶ 15} Dioun raises a constitutional argument of his own, citing the requirement in Article IV, Section 3(B)(3) of the Ohio Constitution that "[a] majority of the judges hearing the cause shall be necessary to render a judgment." He takes the provision to mean that a majority of the judges who originally heard oral argument in a case must issue judgment in the case. He, thus, contends that the provision is violated when a decision on reconsideration is issued by less than a majority of the panel that heard oral argument. We disagree.

{¶ 16} The phrase "hearing the cause" in the constitutional provision is not a reference to oral argument. It is well understood that a court of appeals may "hear" a case without oral argument. *See, e.g.*, App.R. 21(A) (providing for the submission of cases without oral argument); *see also Black's Law Dictionary* 865 (11th Ed.2019) (defining "heard and determined" as "having been presented to a court that rendered judgment"). Because oral argument is not required at all, Article IV, Section 3(B)(3) does not prevent a successor judge from participating in a decision on reconsideration. It simply requires that a majority of the judges who consider an application for reconsideration is necessary to render a judgment on the motion.

*B. Judicial authority is not personally held by any individual judge*

{¶ 17} Not only is the replacement on a panel of a judge who has left the bench consistent with our Constitution, it also comports with our longtime understanding of the judicial role. A court's identity is wholly independent from the specific individuals who make up its personnel. Thus, a "court as an entity remains the same, regardless of any change in personnel." *Cincinnati v. Alcorn*, 122 Ohio St. 294, 297, 171 N.E. 330 (1930).

{¶ 18} Our system is replete with examples of this principle. When a member of a court of appeals sits by designation in a district different from his

home district, "he sits as a judge of the district of designation, with all the powers of a judge resident of such district." *Id.* It is common practice for a new judge on a court to take over the docket of the judge that he replaces. *See, e.g.*, *State v. Richard*, 8th Dist. Cuyahoga No. 60741, 1991 Ohio App. LEXIS 5470, *6 (Nov. 14, 1991) ("We note that Judge Lawther retired in 1989 and his docket was assumed by newly elected Judge Wells"). And when an extraordinary writ is filed against a judge who subsequently leaves the bench, we will substitute the judge's successor in the action. *See, e.g.*, S*tate ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516, ¶ 6; Civ.R. 25(D)(1).

{¶ 19} The independent existence of courts and panels separate and apart from their particular members is crucial to the continuity of the judiciary itself. A judge exercises judicial authority only by virtue of the office he occupies during his active tenure on the bench. When a judge retires or dies, he is incapable of exercising judicial authority. *Holland*, 27 Ohio St.2d 77, 271 N.E.2d 819. The judicial authority belongs to the office, not the judge.

{¶ 20} Our appellate rules reinforce this understanding. Appellate Rule 21(B)(2) states: "If the membership of the panel changes after the names of the judges are made available to the parties pursuant to this rule, the court of appeals shall immediately make the new membership of the panel known to the parties." The rule, thus, contemplates that a panel continues to exist even if the membership on the panel changes.

{¶ 21} Federal courts also recognize that it may at times be necessary to replace a member of a panel and that a panel exists separately from the identity of the judges who make up the panel. *See, e.g.*, General Order 3.2(h) of the United States Court of Appeals for the Ninth Circuit (2021), https://www.ca9.uscourts.gov/rules/general-orders/ (accessed Jan. 27, 2022) [https://perma.cc/LW6S-T9R2] ("If, after a matter is under submission to a three -judge panel, a judge becomes unavailable by reason of death, disability, recusal,

or retirement from the Court, the remaining two judges may—if in agreement—decide the matter as a quorum * * * or shall request the Clerk to draw a replacement judge"); Internal Operating Procedure 34(b)(3) of the United States Court of Appeals for the Sixth Circuit (2012), https://www.ca6.uscourts.gov/rules-and-procedures (accessed Jan. 27, 2022) [https://perma.cc/SE2U-L25W] ("Where it is necessary to bring in a new judge to complete a panel, the clerk will draw a name from among the active judges not already on the panel"); *Carver v. Lehman*, 558 F.3d 869, 880 (9th Cir.2009) (Reinhardt, J., concurring in judgment only) ("As a result of Judge Ferguson's death, it was necessary to replace him on this case with another member of this court drawn at random"); *Gomez-Sanchez v. Sessions*, 892 F.3d 985 (9th Cir.2018) (Judge Kozinski, who had recently retired, was replaced on a panel by Judge Wardlaw pursuant to the Ninth Circuit's General Order 3.2(h)); *Hitchcock v. Wainwright*, 777 F.2d 628 (11th Cir.1985) (en banc) (after the recusal of Judge Hatchett, Senior Judge Morgan elected to join the panel pursuant to 28 U.S.C 46(c)).

{¶ 22} Thus, we have little difficulty concluding that the Tenth District Court of Appeals acted within the bounds of the law when Judge Nelson replaced Judge Horton on the panel considering Jezerinac's application for reconsideration.

### III. Conclusion

{¶ 23} The Ohio Constitution requires that appellate panels be composed of three judges and that three judges participate in the disposition of each case. When a judge leaves the bench, he may no longer exercise judicial authority. Therefore, it is appropriate to replace that judge on an appellate panel for purposes of deciding a motion for reconsideration. In such an event, the panel remains "the panel that issued the original decision" within the meaning of App.R. 26(A)(1)(c). Accordingly, we affirm the judgment of the Tenth District Court of Appeals.

Judgment affirmed.

8

O'CONNOR, C.J., and KENNEDY, FISCHER, DONNELLY, STEWART, and PIPER, JJ., concur.

ROBIN N. PIPER III, J., of the Twelfth District Court of Appeals, sitting for BRUNNER, J.

————————————

Hahn, Loeser & Parks, L.L.P., Marc J. Kessler, and Elisé K. Yarnell, for appellees Ronald M. Jezerinac Sr., Tiffany Sexton, FMKF, L.L.C., and Doug Sexton.

Barnes & Thornburg, L.L.P., Robert C. Folland, and Kyle P. Gerlach, for appellee Steven Skutch.

Bailey Cavalieri, L.L.C., James G. Ryan, Timothy A. Riedel, and Matthew T. Schaeffer, for appellee Brewery Real Estate Partnership.

Allen, Stovall, Neuman, Fisher & Ashton, L.L.P., Rick L. Ashton, and Jeffrey R. Corcoran; and David A. Kopech, for appellants.

————————————