[Cite as *Jezerinac v. Dioun*, 2023-Ohio-2882.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ronald Jezerinac et al., | : | |
| Plaintiffs-Appellees, | : | No. 22AP-505 |
| | | (C.P.C. No. 16CV-7939) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Mo Dioun et al., | : | |
| Defendants-Appellants. | : | |

_____

| | | |
|---|---|---|
| Taste Hospitality Group, Ltd., | : | |
| Plaintiff-Appellant, | : | No. 22AP-506 |
| | | (C.P.C. No. 18CV-3879) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Brewery Real Estate Partnership et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on August 17, 2023

**On brief:** *Hahn Loeser & Parks LLP*, *Marc J. Kessler*, *Rocco I. Debitetto*, and *Elise K. Yarnell*, for Ronald Jezerinac et al. **Argued:** *Elise K. Yarnell*.

**On brief:** *Allen Stovall Neuman & Ashton LLP*, *Rick L. Ashton*, *James A. Coutinho*, and *Jeffrey R. Corcoran*, for Mo Dioun et al. **Argued:** *Rick L. Ashton*.

**On brief:** *Ice Miller, LLP*, *Diane M. Menashe*, and *Alexandra Petrillo*, for Taste Hospitality Group, Ltd. **Argued:** *Diane M. Menashe*.

**On brief:** *Bailey Cavalieri LLC, James G. Ryan, Timothy A. Riedel, Matthew T. Schaeffer*, for Brewery Real Estate Partnership et al. **Argued:** *Matthew T. Schaeffer*.

APPEALS from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} These appeals arise from the trial court's July 18, 2022 order directing a receiver managing a protracted "business divorce" to accept an offer for the controlling interest in Barley's, a brewery and restaurant at the center of the dispute. For the following reasons, we dismiss these appeals.

## I. Facts and Procedural History

{¶ 2} The history of this case has been summarized in two prior decisions of this court. *See Jezerinac v. Dioun*, 10th Dist. No. 18AP-479, 2019-Ohio-726 ("*Jezerinac I*"); *abrogated by Jezerinac v. Dioun*, 10th Dist. No. 18AP-479, 2020-Ohio-587 ("*Jezerinac II*"). We briefly review this background here in order to ground the present appeal in the relevant context.

### A. The Parties

{¶ 3} Barley's Brewing Company is a successful brewery and restaurant located on North High Street in a downtown Columbus neighborhood known as the Short North. The brewery was founded in the early 90's by Ron Jezerinac and his late wife Lillian (collectively, "the Jezerinacs")[1] when the couple and several other investors formed a limited partnership known as Brewpub Restaurant Limited Partnership ("BRLP"). BRLP is comprised of its general partner and operator, Brewpub Restaurant Corporation ("BRC"), and approximately a dozen or so additional limited partners. Ron Jezerinac and his business partner, Mo Dioun, each own 50 percent of BRC and consequently share joint responsibility for the operation of the brewery. Much of Barley's success is attributable to its favorable long-term lease in a highly sought-after and heavily trafficked location. *See Jezerinac II* at ¶ 1. The brewery operates out of a building at 467 North High Street, as it

---

[1] Ron and Lillian's daughter, Tiffany Sexton, became formally involved in the business later as well, as the 50 percent interest holder in Barley's Manufacturing and other various related entities.

has since it first opened.  The building is owned by Brewery Real Estate Partnership ("BREP"), a general partnership consisting of four partners, one of whom is an entity owned by Ron Jezerinac.

{¶ 4}  In the mid-2000s, the Jezerinacs were introduced to Mo and Mina Dioun, their daughter Sheila, and Sheila's husband, Adam Trautner (collectively, "the Diouns"). The families quickly became close.  By 2011, Mo Dioun and Ron Jezerinac were engaged in several joint real estate ventures around central Ohio and were equal partners in multiple limited liability companies.  This progression eventually led to Mo Dioun and Ron Jezerinac sharing equal ownership of BRC.  The families became further entwined after plans to expand Barley's required creation of additional joint ventures.

### B.  The Trial Court Proceedings

{¶ 5}  Unfortunately, this arrangement was not destined to last.  Relationships between the two families began to deteriorate over the management of their business ventures, and in August 2016, the Jezerinacs sued the Diouns and related entities for numerous alleged corporate harms.  In part, the complaint sought the court's assistance to disentangle the families' business interests, including through the judicial dissolution of BRC.  (Aug. 23, 2016 Compl. at ¶ 132-36.)  Eventually, both sides moved the trial court for the appointment of a receiver, but disagreed on whether it was necessary to include BRC among the parties' other joint ventures.  (Jan. 24, 2017 Diouns' Mot. for Appointment of Receiver; Feb. 6, 2017 Jezerinacs' Mot. for Appointment of Receiver.)  While advocating for BRC's inclusion in the receivership estate, the Jezerinacs noted that the appointment of a receiver would trigger BRC's withdrawal from BRLP as the general partner, resulting in the dissolution of BRLP unless the remaining limited partners were to appoint a new general partner within 90 days.  (Jezerinacs' Mot. for Appointment of Receiver at 6-8.)  BRLP's limited partners intervened to participate in the briefing.

{¶ 6}  The court agreed to appoint a receiver "for the purpose of protecting and preserving, managing and operating, and collecting the necessary profits of [the businesses, including BRC] during the pendency of this action."  (May 25, 2018 Mot. to Consolidate, Ex. 1 (March 10, 2017 Order Appointing Receiver) at 7.)  The trial court further authorized the receiver to "conduct sales of receivership property, including sale of some or all of the Businesses," subject to its approval and in accordance with law.  (*Id.* at 9.)  The court found

that under the terms of BRLP's operating agreement, BRC ceased to be the general partner when both of its members consented to the appointment of a receiver, but BRC's withdrawal from BRLP would not go into effect while the timeframes in the operating agreements remained tolled. (*Id.* at 6.) The receivership order was not appealed.

**C. The Lease**

{¶ 7} Some months later, BREP sought leave from the court to terminate the lease, alleging the appointment of a receiver triggered a default under the lease terms unless the receivership was set aside within 30 days. (May 26, 2017 BREP Mot. for Leave.) After requesting briefing from the parties, the trial court concluded the receiver could not assign the lease without BREP's permission, that BRLP being placed in a receivership was a default event under the terms of the lease, and the default triggered the landlord's right to terminate the lease if the receivership was not set aside within 30 days. The trial court also determined it could toll the 30-day deadline to cure the breach, effectively staying BREP's ability to terminate the lease until further order. (Aug. 24, 2017 Decision and Entry.) The Diouns appealed, but this court determined the trial court's decision was not a final order under R.C. 2505.02 and dismissed the appeal. (Oct. 27, 2017 Journal Entry.)

{¶ 8} In early 2018, two entities—a company affiliated with the Jezerinacs, LLJBucksBrew, LLC ("LLJBucksBrew"), and a company affiliated with the Diouns, Taste Hospitality Group Ltd. ("Taste")—submitted offers to the receiver to purchase Barley's.[2] The receiver determined the $4.2 million offer from Taste had greater value to the receivership estate than the competing offer of $1.875 million and informed the court of his intention to accept it on two conditions: (1) Taste could demonstrate its financial ability to close on the offer price; and (2) Taste could provide evidence it would be able to enter into a lease with BREP. (Apr. 9, 2018 Mot. of Receiver.)

{¶ 9} Prior to the receiver sharing this assessment with the court, BREP filed a notice that it had rejected a lease offer from Taste and made an agreement to enter into a lease with LLJBucksBrew upon termination of the existing lease. (Apr. 5, 2018 BREP Notice.) In addition, BREP submitted an affidavit from the owner of one of its four

---

[2] This decision refers to offers to purchase "Barley's" for ease of reference. Barley's, in this context, refers to BRC's partnership interest in BRLP, assets owned by BRLP, and offers to buy-out the interests of BRLP's limited partners.

partners, David Lyon, confirming BREP's unwillingness to work with the Diouns or Dioun family-related entities and averring they would not consider lease offers from any entities not related to the Jezerinacs. (May 1, 2018 BREP Memo in Opp., Ex. A (Aff. of David J. Lyon).)

{¶ 10} In its decision issued after the hearing, the trial court noted that the only two offers before it were from the Jezerinac and Dioun entities, and that the LLJBucksBrew offer was "the highest and best offer, even though it [was] not the largest sum of money." (June 4, 2018 Decision and Entry at 2.) Because BREP had already rejected an offer to contract with Taste and "the key to this case is the lease," the trial court reasoned, the LLJBucksBrew offer was "best for the Barley's company." (*Id.*) Accepting the LLJBucksBrew offer would allow for a "going-concern" sale of Barley's instead of selling the business's assets piecemeal. (*Id.* at 3.) The court also held that its original ruling on the lease's "three-year relationship" provision remained in place, as well as its conclusion that the lease could not be assigned without BREP's consent. (*Id.*) The court further held that because "BREP is not a party in the receivership before the court[,] [t]he [c]ourt does not have the power to force BREP to negotiate" with the Diouns, Taste, or any other party. (*Id.* at 4.) Finally, the court determined it had "no reason to believe a third-party would make an offer better than Taste Hospitality or LLJBucksBrew." (*Id.* at 5.) Consequently, the trial court issued an order directing the receiver to accept the $1.875 million LLJBucksBrew offer and dissolving the receivership stay against the lease, effective upon closing of the sale. (*Id.* at 6.)

**D. The Appeal.**

{¶ 11} The Diouns appealed, and the June 4, 2018 order was stayed. In a decision rendered February 28, 2019, a majority of this court sustained the Diouns' second and third assignments of error that alleged the trial court erred in entering its August 24, 2017 order on assignability and termination and its June 4, 2018 order approving the sale of Barley's to the Jezerinacs. The majority found "the plain language of the contract permit[s] an assignment of the lease without the approval of the landlord if ownership control of BRLP is transferred to the Dioun family." *Jezerinac I* at ¶ 27. The decision next addressed whether the lease's termination clause was triggered by the default event, which it characterized as a "technical rather than substantive default." *Id.* at ¶ 30. The panel

concluded that because the business deadlines remained stayed by the trial court, the 30-day deadline to set aside the receivership had not begun to run, and thus BRLP was not yet in breach of the lease. *Id.* at ¶ 32.

{¶ 12} The Jezerinacs moved for reconsideration of *Jezerinac I* on March 11, 2019. On reconsideration, this court found errors in the *Jezerinac I* decision, and vacated it in its entirety. *Jezerinac II* at ¶ 29 ("Because these fundamental errors led to the flawed analysis in *Jezerinac I*, we grant appellees' application for reconsideration and vacate *Jezerinac I*.").

{¶ 13} Relevant to this appeal, the panel held in *Jezerinac II* that the trial court did not abuse its discretion in interpreting the lease agreement's default and termination provisions. *Jezerinac II* at ¶ 42. We held the lower court properly weighed the equities and determined the default event was not a minor deviation from the agreement but a "significant substantive default of a long-term commercial lease," involving sophisticated parties with equal bargaining power. *Id.* at ¶ 44. Furthermore, the lease contained the ability to cure the default and the parties failed to do so. *Id.* We found any arguments for assigning the lease were essentially moot after we affirmed BREP's right to terminate the lease and BREP expressed its intent to do so once the trial court dissolved its stay. *Id.* at ¶ 46. Regardless of whether the lease could be assigned under other circumstances, it was already in default and thus subject to termination at BREP's discretion. *Id.*

{¶ 14} With respect to the competing bids for Barley's, we found that "[g]iven the trial court's careful analysis of the competing offers, and its recognition that Barley's existing lease was in default and would be terminated, the trial court did not abuse its discretion in finding that LLJ[BucksBrew] made the best offer." *Id.* at ¶ 51. This extended to the Diouns' argument that the trial court abused its discretion by denying the Diouns' request to open Barley's to public offers. We agreed with the trial court that there was no evidence in the record to support a conclusion that a general solicitation would result in better offers than the one made by LLJBucksBrew, primarily due to the agreement upon termination for the existing lease between LLJBucksBrew and BREP. *Id.* at ¶ 52. We held that the trial court could not compel BREP, the non-party landlord, to enter into a lease with a third-party, and thus Barley's would have to be offered publicly for sale without its most valuable asset if LLJBucksBrew's offer was rejected. Finally, we agreed with the trial

court that any potential gain from a higher offer would likely be offset by the cost of continuing the receivership and marketing the business. *Id.*

{¶ 15} In summary, *Jezerinac II* determined several key legal issues relevant to this appeal. *First*, it was equitable to enforce the lease's default and termination provisions because BREP, a non-party to the litigation, is a separate legal entity with clear rights under the lease. *Second*, the assignability provision was moot due to BREP's intent to terminate the lease and enter into a new agreement with a third-party upon dissolution of the stay. *Third*, Taste's offer was not viable because it would not include the lease, and thus LLJBucksBrew made the best offer. *Fourth*, the trial court reasonably concluded the cost to maintain the receivership and advertise the sale of Barley's outweighed the likelihood of a better offer, particularly without the possibility of operating at its current location.

{¶ 16} The Diouns sought reconsideration, and their motion was denied. The Diouns then appealed to the Supreme Court of Ohio, who declined to address the merits of our decision but accepted jurisdiction on a procedural question. Our decision in *Jezerinac II* was affirmed on February 24, 2022. *Jezerinac v. Dioun*, 168 Ohio St.3d 286, 2022-Ohio-509, ¶ 22-23 ("*Jezerinac III*"). Thus, after nearly four years of appeals, the question of Barley's future returned to the trial court.

{¶ 17} In accordance with the trial court's prior order, BREP moved to dissolve the stay of action on the lease in order to proceed with termination. The Diouns filed a memorandum in opposition, asserting passage of time and changed circumstances precluded the implementation of the court's June 4, 2018 order approving the sale to LLJBucksBrew. The receiver recommended keeping the stay in place until the sale of Barley's could be finalized. The Jezerinacs had no objections. The court conducted a hearing on the motion on June 27, 2022.

{¶ 18} On July 18, 2022, the court issued an order on the motion and issues raised at the hearing. In its decision, the court acknowledged that our decision in *Jezerinac II* and the Supreme Court's decision in *Jezerinac III* affirmed its June 4, 2018 order. (July 18, 2022 Order and Entry at 2-3.) Turning to more recent events, the court addressed the revised offers from LLJBucksBrew, submitted to the receiver on May 11, 2022, and from Taste, tendered the morning of the hearing. LLJBucksBrew submitted a new, and substantially lower offer of $1 million, reduced from its original $1.875 million offer.

LLJBucksBrew claimed the value of Barley's had changed substantially during the pendency of the appeals and the pandemic but reiterated its offer maintains a lease with BREP, allowing Barley's to be sold as a going concern. (*Id.* at 4.) Specifically, the offer was to purchase "the partnership interest of BrewPub Restaurant Corp. ('BRC'), the furniture fixtures and equipment, the goodwill and intellectual property, to include the rights to the names 'Barley's Brewing Company' and 'Brewcadia' (collectively, the 'Acquired Assets')." (Emphasis deleted.) (May 16, 2022 Receiver's Memo in Opp., Ex. A (May 11, 2022 LLJBucksBrew Purchase Offer) at 3.) Additionally, LLJBucksBrew offered to buy out the interests held by the limited partners, if they desired. (*Id.*) The end result would entail the dissolution of BRC and BRLP and the formation of a new limited partnership in its place, with LLJBucksBrew serving as its new general partner. (*Id.*) Taste's offer of $4.2 million remained premised on the assignment of the existing lease under Section 9.01(a) of the Amended BRLP & BREP Lease or the successful negotiation of a new lease. (July 18, 2022 Order and Entry at 4-5.)

{¶ 19} The trial court determined the only offer including the lease, which would allow Barley's to be sold as a going concern, was from LLJBucksBrew. This determination was based on both the new lease agreement and the law of the case, which held the court could not compel BREP to enter into a lease against its wishes with either Taste or a third party. (July 18, 2022 Order and Entry at 5.) Concluding the reduced offer from LLJBucksBrew was still in the best interest of the receivership estate, the court instructed the receiver to accept said offer and conditionally granted BREP's motion to lift the stay of action on the lease, effective upon the closing of the sale and the formal commencement of the new lease. (*Id.*) The Diouns and Taste ("appellants") timely appealed the July 18, 2022 order.

## II. Assignment of Error

{¶ 20} Appellants assign the following assignment of error for our review:

> The Trial Court erred in entering the July 18, 2022 *Order & Entry* (R. 1031, the "July 2022 Order").

## III. Final and Appealable Order Discussion

### A. Finality Requirements

{¶ 21} As an initial matter, we must first determine whether the trial court's July 18, 2022 order is subject to appellate review at this stage of the proceedings. The Jezerinacs moved this court to dismiss the appeal for lack of a final, appealable order on September 1, 2022, which was joined by BREP. The Diouns argue in response that the order is a final order under either R.C. 2505.02(B)(2) or (B)(4). The receiver did not participate in briefing on appeal.

{¶ 22} Article IV, Section 3(B)(2) of the Ohio Constitution limits the jurisdiction of the appellate courts to considering only final, appealable orders. "If an order is not a final, appealable order, the appellate court lacks jurisdiction and the appeal must be dismissed." (Citation omitted.) *K.B. v. Columbus*, 10th Dist. No. 14AP-315, 2014-Ohio-4027, ¶ 8. An order constitutes a final, appealable order if it meets the finality requirements set forth in R.C. 2505.02 and, if applicable, the requirements of Civ.R. 54(B). "The Supreme Court of Ohio has set forth a two-step analysis for determining whether an order is final and appealable. First, the appellate court must determine whether the order constitutes a final order as defined by R.C. 2505.02." (Internal citation omitted.) *Peppers v. Scott*, 10th Dist. No. 15AP-929, 2016-Ohio-8265, ¶ 11, citing *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 21 (1989). "If the order is final under R.C. 2505.02, the court must determine whether Civ.R. 54(B) applies." *Id.*

{¶ 23} R.C. 2505.02(B) defines the categories of final orders, in relevant part, as follows:

> (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
>
> * * *
>
> (4) An order that grants or denies a provisional remedy and to which both of the following apply:
>
> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful
or effective remedy by an appeal following final judgment as
to all proceedings, issues, claims, and parties in the action.

**{¶ 24}** If one of these categories is satisfied, we turn to the second step of the analysis and determine the applicability of Civ.R. 54(B). Civ.R. 54(B) permits a court to "enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." Such a determination is required for a final order under R.C. 2505.02(B)(2), but not under R.C. 2505.02(B)(4). If Civ.R. 54(B) certification is required, a final order that lacks such language is not reviewable on appeal. *Whipps v. Ryan,* 10th Dist No. 12AP-509, 2013-Ohio-4334, ¶ 25 ("*Whipps IV*").

### B. R.C. 2505.02(B)(2) Legal Framework

**{¶ 25}** We first consider whether the trial court's order satisfies the requirements of R.C. 2505.02(B)(2).

**{¶ 26}** Pursuant to R.C. 2505.02(B)(2), a "special proceeding" is an action or proceeding that is specially created by statute in derogation of common law. R.C. 2505.02(A)(2). With respect to R.C. 2505.02(B)(2), "[a] substantial right involves the idea of a legal right that will be enforced and protected by law." *Recovery Funding, L.L.C. v. Beckman*, 10th Dist. No. 20AP-592, 2022-Ohio-1095, ¶ 26. "An order that *affects* a substantial right is one which, if not immediately appealable, would foreclose appropriate relief in the future." (Emphasis added.) *Epic Properties v. OSU LaBamba, Inc.,* 10th Dist. No. 07AP-44, 2007-Ohio-5021, ¶ 13.

**{¶ 27}** "A receivership is a special proceeding." *Lucas v. Reywal Co., L.P.*, 10th Dist. No. 17AP-479, 2019-Ohio-27, ¶ 15. It is well-settled that an order appointing or removing a receiver affects a substantial right made in a special proceeding. *Whipps IV* at ¶ 29. And this court has held that "an order approving the final sale of assets by a receiver is appealable." *Whipps v. Ryan*, 10th Dist. No. 10AP-167, 2011-Ohio-3300, ¶ 8. Generally, while "an order approving a receiver's final report and approving the definitive d[is]position of assets is a final, appealable order, an interim order setting values or otherwise covering ongoing administration of the assets is not." *Leonard v. Georgesville Ctr., LLC*, 10th Dist. No. 13AP-441, 2013-Ohio-5713, ¶ 10.

{¶ 28} An interim receivership order *may* affect a substantial right for purposes of R.C. 2505.02(B)(2) if the effect of the order resolves a claim and forecloses future relief. For example, this court has found finality in an order confirming a real property sale that effectively determined ownership interest in a business. *See Mandalaywala v. Zaleski*, 124 Ohio App.3d 321, 331 (10th Dist.1997) (Emphasis added.) ("The trial court's order *confirming* the sale of property by the receiver effectively adjudicates, between equal shareholders, the right to ownership and control of the corporation. We conclude that the order is one affecting a substantial right from which an appeal to this court lies."). An interim order regarding assets in a receivership is not appealable, however, even though "appellants have a substantial right to receive fair value for their property," when "the order at issue does not affect that substantial right because appellants are not foreclosed from challenging the fairness of any future sale price." *Leonard* at ¶ 10.

### C. R.C. 2505.02(B)(2) Discussion

{¶ 29} Thus, in order to demonstrate finality under R.C. 2505.02(B)(2), the Diouns must show the order was made in a special proceeding, affects a substantial right, and requires immediate review in order for the substantial right to be protected. As discussed above, the order was made in a special proceeding.

{¶ 30} So, next we turn to whether it affects a substantial right. An order affects a substantial right only if denying the opportunity for review would preclude the possibility of future relief for the parties. The substantial right at issue at this juncture involves the respective statutory and common law rights of the parties, including BREP and BRLP's rights under the lease agreement and the authority of the receiver under R.C. 2735.04(B)(5) to sell and make transfers of real or personal property. These substantial rights have already been determined by this court in *Jezerinac II*. As such, the trial court was bound by the law of the case, and so are we. The law of the case doctrine does not allow us to adjudicate these rights again, nor does a lower offer price independently implicate a new substantial right for our consideration.

{¶ 31} "In most applications, the law-of-the-case doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *In re Estate of Porter*, 10th Dist. No. 17AP-414, 2017-Ohio-8840, ¶ 12. Thus, the doctrine

functions to compel a trial court to follow the legal mandates of the reviewing court. *Meeks v. Meeks*, 10th Dist. No. 06AP-1186, 2008-Ohio-2015, ¶ 19. "Likewise, the decision of an appellate court in a prior appeal will ordinarily be followed in a later appeal in the same case and court." *Id.* We have extended the law of the case doctrine to prior decisions of the trial court not disturbed on appeal, finding that a lower court generally must adhere to its own prior rulings. *Clymer v. Clymer*, 10th Dist. No. 95APF02-239, 1995 Ohio App. LEXIS 4303 (Sept. 26, 1995).

{¶ 32} The purpose of the rule is to ensure consistency of results and avoid endless litigation of the same issues. *Meeks* at ¶ 20. However, the "doctrine should not be taken to imply that a trial court can never, under any circumstances, reconsider its prior ruling." *Clymer* at *9. "Additional evidence, prior error or a change in circumstances might well argue against blind adherence to a prior ruling." *Id.* "Although an appellate court may choose to reexamine the law of the case it has itself previously created if that is the only means to avoid injustice, such reexaminations must not be undertaken lightly nor encouraged as a common course of conduct for unsuccessful litigants." *Meeks* at ¶ 21.

{¶ 33} The 2018 trial court order directing the receiver to accept the original LLJBucksBrew bid contained an express determination pursuant to Civ.R. 54(B) certifying the appropriateness of an interlocutory appeal. Presumably, the trial court recognized the order implicated a substantial right, and an interlocutory appeal was appropriate at that stage in the proceedings despite the remaining pending claims. On appeal, we reviewed the findings made by the trial court and affirmed the order on several key legal issues, eventually remanding the order for implementation in 2022.

{¶ 34} The Diouns essentially argue the July 18, 2022 order following *Jezerinac II* restarts the claims from scratch. But the trial court's order does not dispose of the merits of *any* claims pending in the underlying litigation or resolve *any* new issues of law. Instead, the court simply applied the law of the case as established by *Jezerinac II* and found that LLJBucksBrew's revised $1 million offer continues to be the best offer because it "maintains the lease with BREP and allows Barley's to be sold as a going concern, which was the key consideration in [the] Court's June 4, 2018 decision." (July 18, 2022 Order and Entry at 4.) After considering the legal rulings from *Jezerinac II* and its own June 4, 2018 order, the trial court made only one new determination in its July 18, 2022 order: that the revised

LLJBucksBrew offer of $1 million remained the most viable offer for Barley's at that time. It did not make any new legal determinations and it did not finalize any sale or transfer of property.

{¶ 35} Generally, an order affects a substantial right under R.C. 2505.02(B)(2) if it resolves a claim and forecloses future relief. All parties agree multiple claims and cross-claims remain pending in the underlying litigation and the July 18, 2022 order does not contain a Civ.R. 54(B) certification.[3] But here, no new substantial right is impacted by the trial court's July 18, 2022 order implementing already-resolved questions of law, despite somewhat changed factual circumstances due to the passage of time. The trial court considered these new facts in light of *Jezerinac II* and concluded the circumstances were not so changed as to warrant reconsideration of its prior factual findings. And, notably, unlike in 2018, the trial court declined to certify this decision as appropriate for an interlocutory appeal pursuant to Civ.R. 54(B).

{¶ 36} Accordingly, because the order on appeal does not affect a substantial right, and because it lacks Civ.R. 54(B) certification, it is not a final, appealable order for purposes of R.C. 2505.02(B)(2).

### D. R.C. 2505.02(B)(4) Legal Framework

{¶ 37} The Diouns argue, in the alternative, that even if the July 18, 2022 order is not final under R.C. 2505.02(B)(2), it is reviewable under R.C. 2505.02(B)(4) and therefore not subject to the requirements of Civ.R. 54(B). (Sept. 12, 2022 Appellants' Memo in Opp. at 8.) An order is appealable under this subsection if it satisfies a three-part test: "(1) the order must either grant or deny relief sought in a certain type of proceeding, which the General Assembly calls a 'provisional remedy;' (2) the order must both determine the action with respect to the provisional remedy and prevent a judgment in favor of the appealing

---

[3] The Diouns assert an express determination under Civ.R. 54(B) is not necessary where an order appealed under R.C. 2505.02(B)(2) does not resolve any claims, but merely affects a substantial right. (Sept. 12, 2022 Appellants' Memo in Opp. to Mot. to Dismiss at 15-16.) While a review of the case law across the state suggests at least one court of appeals follows that reasoning, our court's precedent requires Civ.R. 54(B) language if the order is deemed final under R.C. 2505.02(B)(2). *Compare Doe v. Sherwin*, 11th Dist. No. 2013-P-0058, 2015-Ohio-2451, ¶ 6 (finding appellate jurisdiction under R.C. 2505.02(B)(2) even where the order lacked "no just reason for delay" language) *with Braelinn Green Condominium Unit Owner's Assn. v. Italia Homes, Inc.,* 10th Dist. No. 09AP-1144, 2010-Ohio-2371, ¶ 13 (concluding order was final under R.C. 2505.02(B)(2) but lacked Civ.R. 54(B) certification and was thus not immediately appealable due to other unresolved claims).

party with respect to the provisional remedy; and (3) the reviewing court must decide that the party appealing the order would not be afforded a meaningful or effective remedy by an appeal following final judgment." *Bennett v. Martin*, 186 Ohio App.3d 412, 2009-Ohio-6195, ¶ 31 (10th Dist).

{¶ 38} The first step of the analysis requires us to determine whether the July 18, 2022 order grants or denies the relief sought in a provisional remedy. A provisional remedy is defined as "a proceeding ancillary to an action." R.C. 2505.02(A)(3). R.C. 2505.02(A)(3) provides a non-exhaustive list of examples of provisional remedies, such as a proceeding for attachment or for an order granting the discovery of privileged material. *Id.* The Supreme Court has interpreted this phrase to mean a proceeding that is attendant upon or aids the main proceeding. *State v. Muncie*, 91 Ohio St.3d 440, 449 (2001), citing *Bishop v. Dresser Indus.*, 134 Ohio App.3d 321, 324 (3d. Dist.1999). For example, in *Forest City Invest. Co. v. Haas*, 110 Ohio St. 188 (1924), the court determined the appointment of a receiver is a provisional remedy because its purpose—to preserve the value of the receivership estate until the claims are resolved in the underlying litigation—is incidental to the main action. *Id.* at 194. *See also In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, ¶ 20.

{¶ 39} To satisfy the second requirement, the order must effectively determine the action with regard to the provisional remedy and prevent the aggrieved party from securing a later judgment in their favor on that specific issue. *Summit Park Apts., LLC v. Great Lakes Reinsurance (UK), PLC*, 10th Dist. No. 15AP-820, 2016-Ohio-1514, ¶ 11. And the third requirement of R.C. 2505.02(B)(4) is that the aggrieved party would not be afforded a meaningful or effective remedy on appeal once final judgment is reached on all underlying claims. By way of example, this court has concluded that an order to disclose trade secrets without adequate safeguards qualifies for immediate appellate review under R.C. 2505.02(B)(4)(b) because the aggrieved party would not have an adequate remedy on appeal once the trade secrets are disclosed. *Organ Cole, LLP v. Andrew*, 10th Dist. No. 20AP-65, 2021-Ohio-924, ¶ 14. Similarly, we have concluded an order compelling the involuntary administration of medication satisfies R.C. 2505.02(B)(4)(b) as an act without a meaningful or effective remedy on appeal. *Muncie* at 450. And we have concluded an

order to disclose privileged material to opposing counsel is immediately appealable because it cannot be remedied at a later date. *Summit Park Apts., LLC* at ¶ 11.

### E.  R.C. 2505.02(B)(4) Discussion

{¶ 40} Here, the trial court's July 18, 2022 order granted a lift of the stay against BREP's termination of the lease and directed the receiver to accept the LLJBucksBrew revised offer, effective only upon the closure of the sale of Barley's and the effectuation of a new lease.  The legal conclusions related to the landlord's authority to terminate the lease and contract with a party of their choosing, as well as the conclusion that the highest and best offer for Barley's would be one allowing for its sale as a going concern, were already determined by this court in *Jezerinac II*.  The dissolution of the stay is merely an act under the receivership; it is not independently its own ancillary proceeding.  Thus, while appointment of a receiver may constitute a provisional remedy, we do not find any support for the Diouns' assertion that the July 18, 2022 order "grants or denies a provisional remedy." R.C. 2505.02(B)(4).  Furthermore, as discussed above, the July 18, 2022 order is an interlocutory order directing the receiver to accept an offer, not the final confirmation of sale.  Thus, it does not actually determine the action with respect to a provisional remedy.

{¶ 41} Neither are we persuaded that this order satisfies R.C. 2505.02(B)(4)(b)'s requirement that "[t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action."  As explained above, the trial court's July 18, 2022 order applied the law of the case as established in *Jezerinac II* and made a factual determination regarding the most valuable offer for Barley's.  The only question resolved by the trial court was which offer would result in the most money for the receivership estate.  There are no claims for specific performance or any other right to ownership of unique property that would be foreclosed by accepting LLJBucksBrew's offer.  Therefore, if the Diouns continue to believe the trial court erred in its July 18, 2022 entry concluding the LLJBucksBrew offer is the one most valuable for the receivership estate, they will have a meaningful remedy by an appeal seeking monetary damages following final judgment in the underlying litigation.

{¶ 42} We therefore conclude the trial court's July 18, 2022 order fails to satisfy the requirements set forth in R.C. 2505.02(B)(4).

**F. The July 18, 2022 Order is not Final and Appealable under R.C. 2505.02(B)(2) or (B)(4)**

{¶ 43} The July 18, 2022 order fails to satisfy the finality requirements of either R.C. 2505.02(B)(2) or (B)(4). And, while the inclusion of Civ.R. 54(B) language cannot turn a non-final order into a final one on its own, we note that its absence suggests the trial court may not have considered this order appropriate for interlocutory review.

{¶ 44} Accordingly, we must dismiss the appeal for lack of a final, appealable order.

## IV. Sanctions are not Appropriate in this Matter

{¶ 45} The Jezerinacs included a request for sanctions under App.R. 23 in their motion to dismiss the appeal. App.R. 23 states that "[i]f a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs." Because the request was made in the Jezerinac's motion to dismiss and is raised under App.R. 23, our consideration of sanctions requires us to ask only whether the filing of the appeal itself was frivolous. In the context of App.R. 23, we have interpreted frivolous to mean an appeal that essentially fails to present a reasonable question for review. *See, e.g.*, *Donahue v. McKee*, 10th Dist. No. 21AP-492, 2022-Ohio-1037, ¶ 11 (awarding sanctions where the law on the matter raised on appeal was "well-settled, was easily discoverable by the appellant prior to the filing of his complaint and the filing of [the] appeal, and there [was] no good-faith basis for a modification or extension of the law to allow appellant's claims."). But arguments generally are not frivolous if they raise valid, albeit "tenuous and unpersuasive" questions for review. *Scott Elliott Smith Co., LPA v. Carasalina, LLC*, 10th Dist. No. 10AP-1101, 2011-Ohio-1602, ¶ 28.

{¶ 46} At the heart of the Diouns' appeal is whether a significantly reduced bid for a successful business constitutes such a change in circumstances that it precludes implementing the trial court's prior order. While the trial court was unpersuaded by the changed factual circumstances, and we have concluded that determination was not a final, appealable order, that does not mean the appeal itself was frivolous or in bad faith. While we do not reach the merits of the Diouns' legal arguments on appeal because we have concluded the trial court's entry was not a final, appealable order, we did not arrive at that conclusion without extensive consideration of our court's own precedent and cases from

across the state.  Therefore, we are unable to conclude that the filing of this appeal warrants the award of a sanction against appellants.  The request for sanctions is denied.

**V.  Disposition**

{¶ 47} For the above reasons, we grant the Jezerinacs' motion to dismiss this appeal and deny their request for sanctions.  Having determined the July 18, 2022 decision and entry is not a final, appealable order, we dismiss the appeal for lack of appellate jurisdiction.

*Appeal Dismissed.*

JAMISON and LELAND, JJ., concur.

———————————