[Cite as *Cornell v. Shain*, 2021-Ohio-2094.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MR. CLINT CORNELL, P.A., | : | APPEAL NO. C-190722 |
| | | TRIAL NO. A-1804130 |
| and | : | |
| | | |
| DR. ALAN BEE, As individuals and | : | *O P I N I O N.* |
| also derivatively on behalf of Peak | | |
| Performance Medical, LLC; | : | |
| Community First Injury Care, Inc. | | |
| (d.b.a. Community First Worx); | : | |
| MYONCALL/MD; | | |
| Active Health Holdings, Inc.; and | : | |
| Complete Medical Sales & Services, | | |
| LLC ("Companies"), | : | |
| | | |
| Plaintiffs-Counterclaim- | : | |
| Defendants-Appellants, | | |
| | : | |
| DR. DAVID ELLISON, | | |
| | : | |
| Plaintiff-Counterclaim-Defendant, | | |
| | : | |
| vs. | | |
| | : | |
| W. CURTIS SHAIN, | | |
| | : | |
| Defendant-Counterclaim- | | |
| Plaintiff-Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Finding of Contempt Affirmed, Purge Condition Set Aside, and Cause Remanded

Date of Judgment Entry on Appeal:  June 23, 2021

*Wood & Lamping LLP* and *Dale Stalf*, for Plaintiffs-Counterclaim-Defendants-Appellants Clint Cornell and Alan Bee,

*Rendigs, Fry, Kiely, & Dennis, LLP*, and *Brian D. Goldwasser,* for Defendant-Counterclaim-Plaintiff-Appellee.

**WINKLER, Judge.**

{¶1} This is an appeal from an order of the Hamilton County Court of Common Pleas finding Clint Cornell and Allen Bee in contempt. The contempt finding related to Cornell's and Bee's failure to comply with an order to pay over $260,000 to a receiver for safekeeping during litigation involving companies owned in part by Cornell and Bee. Upon finding Cornell and Bee in contempt, the court provided Cornell and Bee the ability to purge the contempt by paying the overdue funds within ten days of the contempt finding.

{¶2} Cornell and Bee challenge both the contempt finding and the underlying order upon which it is based. We conclude they waived their right to challenge the underlying order by not filing a timely appeal. Further, we hold they failed to demonstrate error with respect to the finding of contempt. However, we determine the purge condition was unreasonable. Accordingly, we affirm the finding of contempt, reverse the part of the order setting forth the purge condition, and remand the case for further proceedings consistent with this opinion.

## Background Facts and Procedure

{¶3} Cornell and Bee along with W. Curtis Shain jointly owed, in varying percentages, business entities used to operate a health care practice (the "Practice") that serviced individual and corporate clients. Shain was the administrator for the Practice. Bee provided chiropractic treatment. Cornell was a physician's assistant to a supervising physician, Dr. David Ellison.[1] The relationship between Cornell, Bee and Shain undisputedly became distrusting and adversarial. Lawsuits were filed on behalf of the entities comprising the Practice, including this one, pitting Cornell and

---

[1] Dr. Ellison was made a party to the lawsuit but is not a party on appeal.

Bee against Shain. In claims and counterclaims, the parties alleged, among other things, conversion based on the diversion of Practice assets, unjust enrichment, and the breach of fiduciary duties.

{¶4} On August 14, 2018, Cornell, Bee and Shain agreed in court to go in "separate directions," with Shain to be divested of his ownership interest in the Practice and retaining no right to revenue generated after that date. Cornell and Bee were to continue a health care practice with Ellison using the facilities, equipment, inventory, and the trade names of the Practice, with the exception of one.

{¶5} The parties also agreed to the appointment of Sumner Saeks as a receiver for the four jointly-owned companies comprising the Practice. Anthony Muto, Cornell and Bee's attorney at the time, explained at the August 14th hearing that the receiver would perform a number of tasks in addition to assisting with the transition of ownership. These tasks included performing a "full accounting, * * * reconstruct[ing] the full revenue and expenses of [the receivership companies[,] and [] determin[ing] whether the money was properly or improperly spent."

{¶6} While the parties agreed that the receiver would perform an accounting of the receivership companies through August 14 and collect account receivables through that date, Muto, who had instructed his clients before that date to divert Practice assets, asserted that his clients were not agreeing that revenue tied to patients Cornell and Bee had seen under the "auspices" of new- or old-but-separate companies were receivership assets.

{¶7} After considering the issue, the trial court agreed to keep the new- and separate-company assets out of the receivership, but indicated that "the Court may, in its equitable powers, clawback some of that money, if at the end of the day

the Court determines that it should have been an asset of the one of the companies in the case."

{¶8} Two weeks later, the trial court entered an order appointing Saeks as the receiver of the four jointly-owned companies—Community First Injury Care, Inc., d.b.a. Community First Worx, Community First Health Services, Inc., Complete Medical Sales & Services, LLC, and Peak Performance Medical, LLC, collectively the "receivership companies." The order also set August 14, 2018, as the termination date of Shain's ownership interest.

{¶9} The limited receivership order authorized the receiver to "conserve the [receivership] companies until the formal transition of ownership," "to [c]ollect and compromise all accounts receivable," and "[t]ake possession of all cash or funds belonging to the [receivership] Companies."

{¶10} Finally, the receivership order required the parties to cooperate with the receiver on all matters including providing invoices for all services, the identification of their new or separate companies, and financials for those companies including bank statements.

{¶11} After the appointment, the receiver began to fulfill his duties and conveyed his findings in a "First Monthly Report" and a "Supplement to the First Monthly Report" that he filed with the court. The trial court held multiple hearings on various matters. Many of these hearings related to Cornell's, Bee's, and Muto's failure to cooperate with the receiver.

{¶12} A new trial judge was assigned to the case in January 2019 as a consequence of the original judge leaving the bench. On March 15, 2019, the receiver filed a "Second Report and Accounting." In this report, the receiver requested that Cornell and Bee be directed to do several things, including pay $260,931.41 into the

receivership. In the receiver's opinion, Cornell and Bee's new and separate companies had collected $95,346.41 from individual or corporate clients that belonged to a receivership entity. The remaining $165,585 represented the value the receiver assigned to equipment and other physical assets he believed were owned by the receivership entities on the split date and that effectively "changed hands" to Cornell and Bee's new companies on the split date.

{¶13} On March 21, 2019, the trial court held a hearing that addressed several issues. This included a motion filed by Shain to disqualify Muto as Cornell and Bee's attorney, and the receiver's request that Cornell and Bee pay the receivership over $260,000. Cornell and Bee challenged the receiver's findings and request, and were unsuccessful in obtaining a full evidentiary hearing on those issues.

{¶14} The trial court issued two orders on April 8, 2019. The first order disqualified Muto as Cornell and Bee's attorney in the case for various violations of the rules of professional conduct. In the disqualification order, the trial court specifically found that Muto had knowingly advised his clients to undertake illegal conduct when he directed Cornell and Bee to divert company funds into their personal bank accounts without Shain's consent. The court found this violation "especially troubling" because Muto was uncooperative with the receiver in his attempts to ascertain the receivership assets.

{¶15} The second order we refer to as the "April 2019 order." That order required Cornell and Bee to pay over $260,000 to the receiver and required Cornell and Bee or their new companies to assume in writing certain leases and financing agreements identified in the receiver's second report.

{¶16}    In its written decision accompanying its entry, the trial court explained with respect to the money it was requiring Cornell and Bee to give to the receiver:

A Receiver's findings do not replace a jury's.  Thus, the money and assets held by the Receivership are for exactly that purpose—to be held until a jury makes a determination regarding which parties have the right to what assets.

Plaintiffs have not moved for an order disqualifying the Receiver.  And Plaintiffs have not offered sufficient evidence to deny the Receiver's request.

This Court finds the Receiver's request should be granted and that Plaintiff's shall pay $260,931.41 into the Receivership.  This does not mean that there is a judg[]ment of any kind against the Plaintiffs. They may be entitled to a portion or all of the funds kept in the Receivership.  But that is for a jury to decide.[2]

* * *

The Receiver is ordered to hold the Receivership assets until further[] ordered by this Court.

{¶17}    Cornell and Bee retained new counsel in May 2019.  In August 2019, Shain moved for contempt based on Cornell's and Bee's failure to comply with the April 2019 order, including their failure to pay any funds to the receiver.  An evidentiary hearing took place on October 3, 2019, with respect to the motion for contempt.   Cornell and Bee raised an inability-to-pay defense.

---

[2] The trial court was under a mistaken impression that a jury demand was filed.  The record reflects the parties did not file a jury demand, waiving their rights to a jury trial.  *See* Civ.R. 38(D).

7

{¶18}    In an order entered on November 12, 2019, the trial court found Cornell and Bee had not paid any money to the receiver and failed to provide any proof that they or their new entities had assumed the leases and financing responsibilities of the receivership companies as required by the April 2019 order. The court further rejected Cornell's and Bee's inability-to-pay defense, expressly finding that their testimony on the issue was not credible. While the court indicated that the sanction for the contempt was a judgment for Shain in the amount of $260,931.41 minus the amount of the receiver's invoice, the court afforded Cornell and Bee the opportunity to purge the contempt by paying $260,931.41 into the receivership within ten days of the entry of the order. The court further threatened criminal contempt.

{¶19}    Ten days later, Cornell and Bee responded to the contempt order by filing a request for an alternative purge condition. Maintaining that they lacked "the financial wherewithal to pay" the $260,931.41, and that the value of the assets they were using in their new companies was far less than the value the receiver assigned, they requested a reprieve. In part, they proposed to turn over all the equipment and other physical assets belonging to the receivership companies "to a qualified person," other than the receiver, for a sale, with the proceeds deposited with the Clerk of Courts. They further proposed to pay $95,346.11 to the Clerk of Courts under an installment plan, without prejudice to their right to recover the funds after a trial. They contemporaneously deposited $5000 with the Clerk of Courts in furtherance of this plan.

{¶20}    Before the court's execution of any sanction for the contempt, Cornell and Bee appealed the November 12, 2019 order, leaving unresolved whether they met the purge condition. In their sole assignment of error, they argue "the trial

court erred in holding [them] in civil contempt because they failed to comply with the court's [April 2019] order requiring them to pay money into the Receivership."[3]

## Jurisdiction

**{¶21}** The first issue we must address is the scope of this court's review. Ohio law provides that appellate courts have jurisdiction to review only final orders and judgments. *See* Article IV, Section 3(B)(2), Ohio Constitution; R.C. 2501.02. Generally, final orders and judgments are defined in R.C. 2505.02(B). Moreover, for our jurisdiction to attach, a party must file an appeal within 30 days of the date on which the order became final. *See* App.R. 3(A); App.R. 4(A)(1); *Fed. Natl. Mtge. Assoc. v. Hirschhaut*, 1st Dist. Hamilton No. C-180473, 2019-Ohio-3636, ¶ 48, citing *Altman v. Parker*, 2018-Ohio-4583, 123 N.E.3d 382, ¶ 17 (1st Dist.).

**{¶22}** The parties do not dispute that this court has jurisdiction to review the order of contempt. It is well settled that a court order finding a party in contempt is a final appealable one, even when, as here, the court has yet to determine if the purge conditions have been met and has not yet imposed a sentence. *See Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, ¶ 21 and 23, cited in *Souders v. Souders*, 1st Dist. Hamilton No. C-150552, 2016-Ohio-3522, ¶ 13. Cornell and Bee timely appealed the contempt order. Thus, this court has jurisdiction to review the trial court's determination that Cornell and Bee were in contempt of the April 2019 order.

**{¶23}** However, some of Cornell and Bee's arguments in support of setting aside the contempt judgment attack the April 2019 order. They claim that order was invalid and cannot serve as the basis for a finding of contempt.

---

[3] Cornell and Bee do not challenge the part of the order finding them in contempt for failing to provide proof that they or their new entities have assumed the leases and financing agreements of the receivership companies.

**{¶24}** A party who does not comply with a final order cannot "collaterally attack" that order "via [an] appeal from the judgment of contempt." *In re Appropriation for Juvenile and Probate Div. for 1979*, 62 Ohio St.2d 99, 101, 403 N.E.2d 974 (1980). In other words, the failure to file a timely appeal of a final, appealable order constitutes a waiver of the right to appeal any errors contained within the order. *Id.*

**{¶25}** Conversely, "[w]here a non-appealable interlocutory order results in a judgment of contempt," the appellate court when reviewing the contempt finding is permitted to review the "propriety" of that underlying interlocutory order. *See In re Appeal of Smith v. Chester Twp. Bd. of Trustees*, 60 Ohio St.2d 13, 396 N.E.2d 743 (1979), paragraph one of the syllabus; *Moton v. Bailey*, 6th Dist. Lucas No. L-19-1122, 2019-Ohio-5365, ¶ 20.

**{¶26}** Ultimately, when reviewing a contempt finding, an appellate court may not review the propriety of an underlying final order that the contemnor failed to timely appeal. We must determine, therefore, if the April 2019 order was a final, appealable order, precluding our review of the propriety of the order, including the requirement that Cornell and Bee pay the receiver over $260,000.

**{¶27}** To resolve this issue, we turn to the definitions of a final order set forth in R.C. 2505.02(B)(1)-(7). We first reject the conclusion that the order met the definition of R.C. 2505.02(B)(1). As a threshold matter, under that definition, an order is not final unless it "in effect determines the action and prevents a judgment." R.C. 2505.02(B)(1).

**{¶28}** In the April 2019 order, the trial court expressly indicated that the order did not determine any of the underlying claims in the lawsuit. Thus, we conclude it did not in effect determine the action and prevent a judgment.

10

{¶29}   The next subsection, R.C. 2505.02(B)(2), defines a final order to include one "that affects a substantial right made in in a special proceeding."  A "special proceeding" is "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity."  R.C. 2505.02(A)(2).  A substantial right is statutorily defined as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect."  R.C. 2505.02(A)(1).

{¶30}   Courts have confirmed that receivership proceedings are "special" and that an order appointing a receiver affects a "substantial right."  *See Gemmell v. Anthony*, 4th Dist. Hocking No. 15CA16, 2015-Ohio-2550, ¶ 6-7, citing *Forest City Invest. Co. v. Haas*, 110 Ohio St. 188, 143 N.E. 549 (1924), paragraph one of the syllabus.  Thus, orders appointing receivers are final and appealable under R.C. 2505.02(B)(2).  Conversely, an interim order merely governing the receivership, though made in a special proceeding, generally does not affect a substantial right and is not immediately appealable under R.C. 2505.02(B)(2).  *See id.* at ¶ 9-10 and cases cited therein.

{¶31}   Cornell and Bee's position throughout this case exposes why the April 2019 order is distinguishable from other orders issued by the court in receivership proceedings.  They maintain that even though the April 2019 order emanated from a receivership proceeding, the order did not involve receivership property.  Instead, the court ordered them to pay the receiver money they earned in their new and separate companies. Further, the court did not order them to return the equipment belonging to the receivership companies, but instead ordered them to pay the receiver the value he placed on that property.  The essence of their challenge was that the order effected an unconstitutional taking of their property because it

11

forced them to turn over their assets before a trial on the underlying claims, including those alleging diversions and breach of fiduciary duties.

{¶32} A court's prejudgment order that takes a party's property during the pendency of litigation, even for safekeeping, risks "the probability of irreparable injury" to the owner of the property. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Consistent with this basic tenant of the law, Ohio's statutory scheme for prejudgment attachments affords an aggrieved party an immediate appeal for the review of a statutory attachment. *See* R.C. 2715.46.

{¶33} Cornell and Bee's position that this was a prejudgment taking of their property without the necessary due-process protections resonates with this court with respect to the finality issue. Their ownership interest in the funds they were ordered to pay the receiver is manifested in our record. *Compare John H. Spencer, Inc. v. Baker and Hostetler*, 38 Ohio App.3d 117, 528 N.E.2d 588 (1st Dist.1987) (For an order directing a defendant law firm to deposit proceeds of a letter of credit with defendant bank to be considered a final order of attachment, the record must demonstrate the law firm had a property interest in the proceeds that could have been subject to a prejudgment attachment.).

{¶34} Cornell and Bee's arguments in this court and in the trial court emphasize the amount of their property taken—over $260,000. This is not a small sum of money, but instead a significant amount, especially to small business owners. The trial court intended to hold this money until after a trial and the resolution of the parties' claims. But this fact does not sufficiently temper the risk of an irreparable injury to Cornell and Bee in the taking of their significant funds, allegedly without the protection of constitutional guarantees.

**{¶35}** As a result of these circumstances, we conclude that the April 2019 order affected Cornell's and Bee's substantial rights to the due process of law that attaches when the government takes the property of a party before judgment. Thus, we conclude the April 2019 order was final under R.C. 2505.02(B)(2). Cornell and Bee waived the right to appeal any claimed errors contained within the April 2019 order when they failed to timely appeal that April 2019 order. *See* App.R. 4(A)(1); *In re Appropriation for Juvenile and Probate Div.*, 62 Ohio St.2d at 101, 403 N.E.2d 974. We limit our review of the contempt finding accordingly.

## Standard of Review

**{¶36}** This court reviews a lower court's decision in civil contempt proceedings under an abuse-of-discretion standard. *See In re Ayers*, 119 Ohio App.3d 571, 575, 695 N.E.2d 1180 (1st Dist.1997); *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4. An abuse of discretion connotes an "unreasonable, arbitrary, or unconscionable decision." *See, e.g., Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). To the extent that Cornell and Bee's arguments raise an issue of law, we apply a de novo standard of review.

## Analysis

**{¶37}** To establish civil contempt, the party seeking to enforce a court order must show by clear and convincing evidence that a court order exists and the nonmoving party has not complied with the terms of that order. *In re Ayers* at 575; *Souders*, 1st Dist. Hamilton No. C-150552, 2016-Ohio-3522, at ¶ 20. "Intent is not a prerequisite to a finding of contempt, but a court may consider whether the party has attempted to comply or attempted to flout the court order." *Abernathy v. Abernathy*, 8th Dist. Cuyahoga No. 92708, 2010-Ohio-435, ¶ 27.

**{¶38}** Cornell and Bee concede they did not comply with the order. They argue this court should excuse their noncompliance on the ground that they did not know they had to pay because the order did not contain a "pay by" date.

**{¶39}** If a contempt charge is based on a party's failure to obey an order of the court, then the order must be "clear," "definite," and "unambiguous." *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 25, citing *In re Ayers*, 119 Ohio App.3d at 576, 695 N.E.2d 1180. The inquiry concerning the clarity of the order is an objective one; a contemnor's "subjective misunderstanding" of the order is not determinative. *Hunter* at ¶ 27.

**{¶40}** The April 2019 order on its face compels the payment of the specified funds to the receiver. Thus, the order is clear and enforceable in contempt. Moreover, in August 2019 Cornell and Bee conceded notice of their obligation under the order in their response to the motion for contempt.[4] Thus, their contrary argument presented upon appeal of the contempt finding is disingenuous in light of their prior acknowledgment.

**{¶41}** Next Cornell and Bee present a variety of arguments concerning the opportunity to be heard and proof of the contempt by a clear-and-convincing standard. In these arguments, they attack the order to pay, claiming the funds sought by the receiver should not have been made a part of the receivership estate. These arguments are directed to the validity of the April 2019 order and, as we previously explained, Cornell and Bee waived these arguments when they failed to appeal the underlying order.

---

[4] In their August 20, 2019 memorandum opposing the contempt motion, Cornell and Bee informed the court that they "do not dispute that they have not yet paid over $260,000 into the Receivership, as they were ordered by the Court to do in the 4/8/19 Order. * * * [H]owever * * * [they] simply do not have the financial wherewithal at this time to do so, and they have not had the financial ability to pay anything close to that amount since April 8, 2019."

**{¶42}** Next we address Cornell and Bee's arguments related to their "inability to pay" defense. A party charged with contempt may defend by alleging and proving, by a preponderance of the evidence, inability to comply with the order. *Souders*, 1st Dist. Hamilton No. C-150522, 2016-Ohio-3522, at ¶ 20, citing *Pugh v. Pugh*, 15 Ohio St.3d 136, 139-140, 472 N.E.2d 1085 (1984), and *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 279, ¶ 20. The defense does not excuse an inability to comply resulting from the alleged contemnor's own willful act. *See Wilson v. Columbia Cas. Co.*, 118 Ohio St. 319, 160 N.E. 906 (1928); *Brockmeier v. Brockmeier*, 91 Ohio App.3d 689, 693-694, 633 N.E.2d 584 (1st Dist.1993).

**{¶43}** At the contempt hearing, Cornell and Bee testified, consistent with their affidavits submitted before the hearing, that they had negative assets. But this representation and their credibility in general was vigorously challenged on cross-examination. This evidence showed cash moving in and out of their personal and new company bank accounts, their access to some resources to comply with the April 2019 order, and their acknowledgment that they never attempted to obtain a loan. The trial court specifically found that Cornell and Bee's claimed inability to pay was not credible based on this impeachment.

**{¶44}** The trial court was in the best position to determine the credibility of Cornell and Bee. *See Souders* at ¶ 22. Cornell and Bee cite nothing in the record or any case law indicating that we should not defer to the trial court on this issue. Thus, upon the record presented, including the testimony at the contempt hearing that Cornell and Bee made no attempt to comply with the April 2019 order to pay, we cannot find that the trial court abused its discretion in finding Cornell and Bee in contempt.

## The Purge Condition

**{¶45}** Finally, Cornell and Bee challenge the purge condition. They argue the trial court erred by failing to afford a reasonable amount of time to purge the contempt.

**{¶46}** In a case such as this one, involving a finding of civil contempt, a court must provide the contemnor a reasonable opportunity to purge the contempt. *Burchett v. Miller*, 123 Ohio App.3d 550, 552, 704 N.E.2d 636 (6th Dist.1997). The trial court abuses its discretion by ordering unreasonable or impossible purge conditions. *Id.* at 552-553.

**{¶47}** Here, the court afforded Cornell and Bee an opportunity to purge the contempt. That opportunity involved the payment of over $260,000 within ten days. The court provided no explanation for such a short deadline. Yet, the evidence at the contempt hearing presented a strong likelihood that Cornell and Bee would need to borrow money or sell assets to comply with the purge condition.

**{¶48}** Upon these facts, we conclude that the ten-day deadline was unreasonable and an abuse of the trial court's discretion. Accordingly, we sustain the assignment of error on this basis and overrule it in all other respects.

**{¶49}** Further, our review of the record indicates the receiver miscalculated the cumulative value of the owned equipment that was changing hands.[5] Because this miscalculation is reflected in the purge condition, we direct the trial court on remand to correct the record with respect to this matter, in addition to setting a more reasonable deadline for compliance with the purge condition.

---

[5] The receiver's second report shows that the value of the leased property for the Louisville location was used instead of the value of the owned equipment. The value of the leased equipment was again used by the receiver when determining the cumulative value of the leases that the new companies had to assume. Based on these figures, the cumulative value of the owned equipment changing hands could be no more than $103,187.

## Conclusion

**{¶50}** Accordingly, we affirm the finding of contempt. Cornell and Bee failed to comply with the trial court's April 2019 order, and they failed to prove their inability to comply. But we set aside the part of the contempt order containing the ten-day purge condition, and remand the cause for proceedings consistent with this opinion.

Judgment accordingly.

**MYERS, P.J.**, and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.