[Cite as *Ohio Atty. Gen. v. Lager*, 2025-Ohio-5649.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ohio Attorney General, | : | |
| Plaintiff-Appellee, | : | No. 25AP-365 |
| | | (C.P.C. No. 18CV-7094) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| William Lager et al., | : | |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on December 18, 2025

*Dave Yost*, Attorney General, and *Elizabeth H. Smith*; *Kegler, Brown, Hill + Ritter*, *Maria M. Guthrie*, and *Matthew M. Zofchak*, for appellee.

*Allen Stovall Neuman & Ashton LLP*, *Rick L. Ashton*, and *Jeffrey R. Corcoran*; *Eastman & Smith LTD*, *Karl H. Schneider*, and *Todd A. Long*; *McNees Wallace & Nurick LLC*, *David M. Marcus*, and *Sarah Hyser-Staub*, for appellants.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellee, State of Ohio ("state"), acting through the Ohio Attorney General, filed a motion to dismiss the present appeal for lack of a final, appealable order. Defendants-appellants, William Lager, Altair Learning Management I, Inc. ("Altair"), IQ Innovations, LLC ("IQ"), and Third Wave Communications, LLC ("Third Wave") (collectively, the "Lager defendants") oppose the state's motion to dismiss. For the reasons that follow, we grant the state's motion and dismiss the appeal.

## I. Facts & Procedural History

{¶ 2} On August 21, 2018, the state filed a complaint against Lager, Altair, IQ, and Travelers Casualty and Surety Company of America ("Travelers") seeking to recover public

funds paid out by the Electronic Classroom of Tomorrow ("ECOT").  ECOT was an online public school that delivered K-12 education services to students in Ohio.  Lager formed ECOT in the early 2000s and the school operated until January 2018.  During ECOT's existence, Lager also formed and operated the for-profit companies Altair and IQ. Lager's daughter and another individual owned and operated the for-profit company Third Wave. Altair, IQ, and Third Wave made millions of dollars doing business with ECOT.

{¶ 3}   On May 2, 2019, the state filed an amended complaint adding Third Wave as a party defendant.  The amended complaint asserted the following claims: Count 1 – public official strict liability against Lager and Altair; Count 2 – breach of fiduciary duty against Lager; Count 3 – recovery of public funds paid to Altair and IQ on contracts violating R.C. 2921.42; Count 4 – damages resulting from Lager's violation of the Ohio Corrupt Practices Act; Count 5 – a claim against Travelers on bonds Travelers issued; Count 6 – liability against Altair, IQ, and Third Wave resulting from a finding for recovery issued pursuant to R.C. 117.28; and Count 7 – recovery of public funds paid to Third Wave on contracts violating R.C. 2921.42.[1]  The state requested relief in the form of money damages and, with respect to its breach of fiduciary duty claim, an accounting.

{¶ 4}   The Lager defendants and the state filed cross-motions for summary judgment.  On May 6, 2022, the trial court issued a decision and entry resolving the motions for summary judgment.  The court granted the state summary judgment on Counts 1 and 2 but concluded "[a] trial [was] necessary to determine the damages in count one for the specified time of Lager's liability and an accounting of the payments Lager received during [] his breach of fiduciary duty in count two." (May 8, 2022 Decision & Entry at 29.)  The court also granted the state summary judgment on Counts 3 and 7, concluding the contracts Altair, IQ, and Third Wave had with ECOT were void and unenforceable pursuant to R.C. 2921.42(H).  The court found the "undisputed facts" demonstrated the amounts ECOT paid Altair, IQ, and Third Wave pursuant to the void contracts.  *Id*.  As such, the court entered judgment against Altair in the amount of $28,885,449.00; IQ in the amount of $128,399,189.58; and Third Wave in the amount of $4,318,167.72.  The court granted the Lager defendants summary judgment on Count 4 of the amended complaint.

---

[1] The amended complaint also asserted claims against Rick Teeters, Michele Smith, Christopher Meister, Ann Barns, Regina Lukich, Brittany Pierson, and Midwest Communications & Media, LLC. However, the state eventually dismissed its claims against these parties.

{¶ 5}   On September 6, 2022, the state filed a motion asking the trial court to render its summary judgment decision a final, appealable order.  The court denied the motion on October 20, 2022.  The court noted it still needed to hold a trial to determine the damages on Count 1, that an accounting was needed on Count 2, and that Count 6 remained "completely unresolved."  (Oct. 20, 2022 Decision & Entry at 5.)  The court also found a "level of interconnectedness exist[ed] among the claims against Defendants and that those claims [did] not create separate and distinct branches of this litigation that may be severed for purposes of appellate review."  *Id.*

{¶ 6}   On September 27, 2022, the state moved for a preliminary injunction.  The state asked the trial court to enjoin the Lager defendants from consuming, encumbering, disposing of, concealing, or transferring any assets or property they acquired during their respective relationships with ECOT.  The Lager defendants opposed the motion, and the court referred the matter to a magistrate for a hearing.

{¶ 7}   On October 27, 2023, the magistrate issued a decision recommending the trial court grant the state's motion for preliminary injunction.  The magistrate initially analyzed "relevant federal case law" to determine whether the trial court had the "authority to issue an asset freeze preliminary injunction."  (Oct. 27, 2023 Mag.'s Decision at 23.)  The magistrate concluded courts could preliminarily freeze assets in suits sounding in equity.  Because the present case was "not one for money damages only; rather, it [was] an action that seeks cognizable relief in equity," the magistrate found the trial court had the authority to issue an asset freeze preliminary injunction.  *Id*. at 30.  The magistrate also found the state satisfied the elements for a preliminary injunction.  As such, the magistrate recommended the trial court issue an order freezing the Lager defendants' assets pending the final adjudication in the case.  The magistrate also recommended the trial court carve out from the asset freeze an amount sufficient to provide Lager with his reasonable and necessary living expenses.

{¶ 8}   The Lager defendants filed objections to the magistrate's decision and the state filed a memorandum in opposition to the Lager defendants' objections.  On April 14, 2025, the trial court issued a judgment entry overruling the Lager defendants' objections and adopting the magistrate's decision as its own.  The court found the "preliminary injunction ordering the freezing of assets [was] a reasonable measure to preserve the *status*

*quo*" in the case. (Emphasis in original.) (Apr. 14, 2025 Jgmt. Entry at 6.) The court's entry included Civ.R. 54(B) language.

{¶ 9} The Lager defendants filed a timely notice of appeal from the trial court's April 14, 2025 entry. On May 5, 2025, the Lager defendants filed an amended notice of appeal, indicating they were appealing the court's May 6, 2022 summary judgment decision as well.

## II. Lack of a Final, Appealable Order

{¶ 10} Ohio appellate courts have jurisdiction to review only final, appealable orders of lower courts within their districts. Ohio Const., art. IV, § 3(B)(2); R.C. 2505.03. "A final order . . . is one disposing of the whole case or some separate and distinct branch thereof." *Lantsberry v. Tilley Lamp Co.*, 27 Ohio St.2d 303, 306 (1971). If an order is not final and appealable, the appellate court lacks jurisdiction and the appeal must be dismissed. *K.B. v. Columbus*, 2014-Ohio-4027, ¶ 8 (10th Dist.), citing *Prod. Credit Assn. v. Hedges*, 87 Ohio App.3d 207 (4th Dist. 1993).

{¶ 11} "An order of a court is a final appealable order only if the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B), are met." *State ex rel. Scruggs v. Sadler*, 2002-Ohio-5315, ¶ 5. *Accord Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, syllabus (1989). R.C. 2505.02(B)(1) through (4)(b) defines a final order as follows:

> An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
>
> (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
>
> (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
>
> (3) An order that vacates or sets aside a judgment or grants a new trial;
>
> (4) An order that grants or denies a provisional remedy and to which both of the following apply:
>
> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶ 12} Civ.R. 54(B) provides that, "[w]hen more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." Civ.R. 54(B) does not alter the requirement that an order must be final before it is appealable. *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 21 (1989).

{¶ 13} Thus, the "threshold requirement" for an order to be a final, appealable order "is that the order satisfies the criteria of R.C. 2505.02." *Gehm v. Timberline Post & Frame*, 2007-Ohio-607, ¶ 15. The state asserts the preliminary injunction order is not a final order because it does not satisfy R.C. 2505.02(B)(4). The Lager defendants contend the preliminary injunction order is a final order pursuant to either R.C. 2505.02(B)(4) or (B)(2).

### A. R.C. 2505.02(B)(4)

{¶ 14} For R.C. 2505.02(B)(4) to apply "a court must first find that the order in question grants or denies a provisional remedy, and then must determine whether the order meets the two-part test in R.C. 2505.02(B)(4)(a) and (b)." *Columbus v. State*, 2023-Ohio-195, ¶ 8 (10th Dist.). R.C. 2505.02(A)(3) defines a provisional remedy as a "proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction." *See Youngstown City School Dist. Bd. of Edn. v. State*, 2017-Ohio-555, ¶ 6 (10th Dist.), citing *Wells Fargo Ins. Servs. USA, Inc. v. Gingrich*, 2012-Ohio-677, ¶ 5 (12th Dist.) (stating "[a] preliminary injunction is a provisional remedy, considered interlocutory, tentative, and impermanent in nature").

{¶ 15} Because the appealed-from order in the present case grants a preliminary injunction, the order meets the threshold requirement of R.C. 2505.02(B)(4). *Columbus* at ¶ 9. *Accord Preterm-Cleveland v. Yost*, 2022-Ohio-4540, ¶ 11 (1st Dist.) (noting the case "squarely f[ell] within the scope of R.C. 2505.02(B)(4)" because the appealed-from order granted a preliminary injunction). As such, to constitute a final order, the preliminary injunction order must satisfy both prongs of R.C. 2505.02(B)(4). *Youngstown City School Dist. Bd. of Edn.* at ¶ 6; *Preterm-Cleveland* at ¶ 12.

{¶ 16} To satisfy R.C. 2505.02(B)(4)(a), the order must "determine[] the action with respect to the provisional remedy" and "prevent[] a judgment in the action in favor of the appealing party with respect to the provisional remedy." R.C. 2505.02(B)(4)(a). A trial court's decision satisfies R.C. 2505.02(B)(4)(a) when "there exist[s] nothing further for the trial court to decide with respect to the provisional remedy." *In re Special Docket No. 73958*, 2007-Ohio-5268, ¶ 29. *See State v. Muncie*, 2001-Ohio-93 (finding an order granting a petition to forcibly administer psychotropic drugs to an offender satisfied R.C. 2505.02(B)(4)(a), because the order determined the action and prevented judgment in the offender's favor with respect to the petition for forced medication); *Preterm-Cleveland* at ¶ 14 (finding an order granting a preliminary injunction satisfied R.C. 2505.02(B)(4)(a) because the trial court gave "no indication that its decision was tentative or contingent in any manner").

{¶ 17} The state claims there are "still further actions for the trial court to take with respect to the injunction" in the present case. (May 13, 2025 Mot. to Dismiss at 9.) The state notes the magistrate ordered the Lager defendants to submit financial information related to Lager's reasonable and necessary expenses to opposing counsel within 14 days of the magistrate's decision. The magistrate further ordered that, 14 days after the receipt of such information, the parties would submit an agreed order to the court "identifying those reasonable and necessary ordinary course expenditures that [would] serve as a carve-out to this asset freeze preliminary injunction." (Oct. 27, 2023 Mag.'s Decision at 42.) Because the Lager defendants have yet to produce this financial information, and the parties have not submitted an agreed order to the court addressing the carve-out, the state claims the preliminary injunction order fails to satisfy R.C. 2505.02(B)(4)(a).

{¶ 18} However, the magistrate ordered that "until a determination on the reasonable and necessary ordinary course expenses has been made, this injunction shall apply to all of the assets of the Lager Defendants." *Id.* at 43. The magistrate explained the carve-out would serve as "an addendum to th[e] preliminary injunction." *Id.* at 42. *See Black's Law Dictionary* (12th Ed. 2024) (defining an "addendum" as "something to be added, usu[ally] to a document"). Thus, the asset freeze preliminary injunction was not made contingent on the carve-out and, until the parties present the trial court with an agreed order regarding the carve-out, the asset freeze applies to all the Lager defendants'

assets.  Moreover, the trial court's resolution of the carve-out issue does not present any possibility that the court will revisit or undo its ruling on the preliminary injunction.  The magistrate emphasized the carve-out was only for "*reasonably necessary expenses* and *not* to maintain a current or former lifestyle*.*"  (Emphasis in original.)  *Id.*

{¶ 19}  Accordingly, the record demonstrates the trial court fully determined the action with respect to the preliminary injunction and prevented the Lager defendants from obtaining a judgment in their favor on the preliminary injunction.  As such, the asset freeze preliminary injunction order satisfies R.C. 2505.02(B)(4)(a).  *Compare Medspace, Inc. v. ICON Clinical Research, L.L.C.*, 2023-Ohio-4552, ¶ 24 (1st Dist.), quoting *Preterm-Cleveland* at ¶ 14 (concluding that, although the preliminary injunction order stated the court "reserved the right to amend the order as discovery progresses," the order satisfied R.C. 2505.02(B)(4)(a) because courts typically retain the ability to revisit interlocutory rulings and the trial court " 'gave no indication that its decision was tentative or contingent in any manner' ").

{¶ 20}  To satisfy R.C. 2505.02(B)(4)(b), the appealing party must demonstrate that, if it cannot appeal now, it will be deprived "a meaningful or effective remedy by an appeal following final judgment as to all proceedings."  *Muncie*, 2001-Ohio-93, ¶ 30.  This division of R.C. 2505.02(B)(4) recognizes that, "in spite of courts' interest in avoiding piecemeal litigation, occasions may arise in which a party seeking to appeal from an interlocutory order would have no adequate remedy from the effects of that order on appeal from final judgment."  *Id.*

{¶ 21}  In *Preterm-Cleveland*, the First District Court of Appeals identified three different "strands of Ohio caselaw" addressing the R.C. 2505.02(B)(4)(b) requirement. *Preterm-Cleveland* at ¶ 17.  The first strand of cases " 'hold that the second prong of R.C. 2505.02(B)(4) cannot be met when the provisional remedy is a preliminary injunction and the ultimate relief sought in the lawsuit is a permanent injunction.' "  *Id.* at ¶ 18, quoting *Clean Energy Future, L.L.C. v. Clean Energy Future-Lordstown, L.L.C.*, 2017-Ohio-9350, ¶ 7 (11th Dist.).  *See Taxiputinbay, L.L.C. v. Put-In-Bay*, 2021-Ohio-191, ¶ 12 (6th Dist.) (noting it is "well established that the granting of a temporary or preliminary injunction, in a suit in which the ultimate relief sought is a permanent injunction, is generally not a final appealable order"); *Hootman v. Zock*, 2007-Ohio-5619, ¶ 15 (11th Dist.).  In such a scenario,

an appeal after the issuance of the permanent injunction provides the appealing party a meaningful and effective remedy. *Fatica Renovations*, *L.L.C. v. Bridge*, 2017-Ohio-1419, ¶ 15 (11th Dist.).

{¶ 22} The state has not sought a permanent injunction in the present case, but contends that "if and when [it] does seek a permanent injunction" the Lager Defendants would have a meaningful or effective remedy by "appealing any permanent injunction that may be issued against them." (May 13, 2025 Mot. to Dismiss at 11.) The state claims it has not had "the opportunity to seek a permanent injunction" because "the parties ha[ve] not even gotten past the preliminary injunction stage." *Id.* The state's contentions in this regard are unavailing. The present case has been pending since 2018 and has proceeded past the summary judgment stage of the litigation. The state has had ample opportunity to seek a permanent injunction. Because the state has not done so, the first strand of cases is inapplicable to the present case.

{¶ 23} The second strand of cases recognize that "an order granting a preliminary injunction is generally not a final appealable order where the preliminary injunction acts to maintain the status quo pending a final determination on the merits." *Columbus*, 2023-Ohio-195, at ¶ 13. *Accord Quinlivan v. H.E.A.T. Total Facility Solutions, Inc.*, 2010-Ohio-1603, ¶ 5 (6th Dist.), quoting *Hootman*, 2007-Ohio-5619, ¶ 5 (holding that a " 'preliminary injunction which acts to maintain the status quo pending a ruling on the merits is not a final appealable order under R.C. 2505.02' "). "Ohio courts generally do not permit immediate appellate review of preliminary injunctions that preserve the status quo because, if the status quo is being preserved, the aggrieved party will have an opportunity to obtain its 'meaningful or effective remedy' " at the conclusion of the case. *Preterm-Cleveland*, at ¶ 22. In the context of a preliminary injunction, courts define the status quo as " ' "the last, actual, peaceable, uncontested status which preceded the pending controversy." ' " *Columbus* at ¶ 13 (10th Dist.), quoting *Obringer v. Wheeling & Lake Erie Ry.*, 2010-Ohio-601, ¶ 19 (3rd Dist.), quoting *Postma v. Jack Brown Buick, Inc.*, 157 Ill.2d 391, 397 (1993).

{¶ 24} The trial court expressly found the asset freeze preliminary injunction was "a reasonable measure to preserve the status quo" pending final adjudication. (Apr. 14, 2025 Jgmt. Entry at 6.) We agree. By freezing the assets in the Lager defendants' possession, the trial court maintained the status quo among the parties until it could resolve the

remaining issues in the case. *See McHenry v. McHenry*, 2013-Ohio-3693, ¶ 4, 15 (5th Dist.) (finding a preliminary injunction order that enjoined the appellant "from transferring, assigning, alienating, placing liens upon or otherwise encumbering [certain] real property" served to "maintain the status quo pending litigation of the trust issues in this matter"); *In re Estate of Reinhard*, 2020-Ohio-3409, ¶ 17 (12th Dist.) (finding a preliminary injunction order requiring the appellant to preserve the decedent's assets in her possession "[e]ffectively . . . preserve[d] the status quo"). *See also SEC v. Infinity Group Co.*, 212 F.3d 180, 197 (3d Cir. 2000), citing *Commodity Futures Trading Comm. v. Am. Metals Exchange Corp.*, 991 F.2d 71, 79 (3rd Cir. 1993) (noting a "freeze of assets is designed to preserve the status quo by preventing the dissipation and diversion of assets"). The status quo relevant to the asset freeze preliminary injunction concerned the point in time after the court issued its summary judgment decision.

{¶ 25} The Lager defendants claim the preliminary injunction order "upends the status quo" because Lager "was not subject to any asset restrictions before this litigation."[2] (May 30, 2025 Memo Contra at 14.) However, as the court in *Preterm-Cleveland* recognized, "any party losing a preliminary injunction decision can muster some claim of immediate harm, but the statute keeps our eyes on the 'meaningful or effective remedy' standard." *Preterm-Cleveland* at ¶ 22. While the preliminary injunction order temporarily restricts the Lager defendants' ability to freely dispose of their assets, the Lager defendants fail to explain how this temporary restriction will deprive them of a meaningful or effective remedy. Because the Lager defendants' assets will be frozen, those assets will be intact at the conclusion of the case. As such, if any assets were wrongfully frozen, those assets can be returned to the Lager defendants at the end of the litigation. Accordingly, the Lager defendants can obtain a meaningful and effective remedy by

---

[2] The Lager defendants also attempt to equate the asset freeze preliminary injunction to an "involuntary receivership or guardianship, with the trial court and the Attorney General micromanaging [Lager's] financial affairs." (May 30, 2025 Memo Contra at 11.) We find the analogy inapposite. Unlike a receivership or a guardianship, the preliminary injunction order does not provide the Attorney General or the trial court with any ability to sell or otherwise dispose of the Lager defendants' assets. *See* R.C. 2735.04(B)(5) (stating a court may grant a receiver the power to "[s]ell and make transfers of real or personal property"); R.C. 2111.50(B)(1) (stating that the probate court, as the superior guardian, shall have the power to "[c]onvey, release, or disclaim the present, contingent, or expectant interests in real or personal property of the ward"). Rather, the preliminary injunction simply enjoined the Lager defendants from disposing of or encumbering their assets.

appealing the preliminary injunction order after the trial court renders its final judgment in the case.

{¶ 26} The third strand of cases address those situations where " 'the proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage' suffered by the appealing party." *Muncie*, 2001-Ohio-93, at ¶ 30, quoting *Gibson-Myers & Assocs. v. Pearce*, 1999 Ohio App. LEXIS 5010 (9th Dist. Oct. 27, 1999). Examples of such situations include the divulgence of privileged communications or the disclosure of confidential information, forced administration of psychotropic medication, cases implicating the right against double jeopardy, and instances where funds will be exhausted before the trial court renders final judgment. *See Cleveland Clinic Found. v. Levin*, 2008-Ohio-6197, ¶ 12-13 (disclosure of confidential information); *Summit Park Apts., L.L.C. v. Great Lakes Reinsurance* (*UK*), *PLC*, 2016-Ohio-1514, ¶ 11 (10th Dist.) (disclosure of privileged material); *Schottenstein, Zox & Dunn v. McKibben*, 2002-Ohio-5075, ¶ 19 (10th Dist.) (disclosure of privileged information); *Muncie* at ¶ 32 (forced administration of medication); *State v. Anderson*, 2014-Ohio-542, ¶ 53-59 (double jeopardy); *Aids Taskforce of Greater Cleveland v. Ohio Dept. of Health*, 2018-Ohio-2727, ¶ 17 (8th Dist.) (funds would be exhausted before final judgment). These cases involve "situations that would irreparably change the party's position between provisional remedy and final judgment." *Preterm-Cleveland* at ¶ 24.

{¶ 27} The Lager defendants fail to demonstrate how their situation would be irreparably changed between the preliminary injunction and final judgment. As noted, because the preliminary injunction simply requires the Lager defendants to maintain their assets, no assets will be dissipated before the court reaches final judgment. Because the Lager defendants fail to demonstrate they would be deprived of a meaningful or effective remedy absent an immediate appeal of the preliminary injunction order, the preliminary injunction order does not satisfy R.C. 2505.02(B)(4)(b). As such, the order is not a final order under R.C. 2505.02(B)(4).

{¶ 28} Although the court's April 14, 2025 entry adopting the magistrate's decision included Civ.R. 54(B) language, the Civ.R. 54(B) designation was superfluous. Initially, " 'an order granting or denying a provisional remedy is not subject to the requirements of Civ.R. 54(B)' because a 'provisional remedy is a remedy other than a claim for relief.' "

*Columbus*, 2023-Ohio-195, at ¶ 9, quoting *State ex rel. Butler Cty. Children Servs. Bd. v. Sage*, 2002-Ohio-1494, ¶ 10. Moreover, because the preliminary injunction order was not a final order, the Civ.R. 54(B) designation could not render the order a final, appealable order. *Gen. Acc. Ins. Co.*, 44 Ohio St.3d at 21.

### B. R.C. 2505.02(B)(2)

{¶ 29} In their memorandum contra, the Lager defendants also claim the preliminary injunction order constitutes a final order under R.C. 2505.02(B)(2). As noted, however, R.C. 2505.02(A)(3) identifies a proceeding for a preliminary injunction as a provisional remedy. The only subsection of R.C. 2505.02 that addresses provisional remedies is R.C. 2505.02(B)(4). Accordingly, when an order grants a preliminary injunction, R.C. 2505.02(B)(4) is the relevant subsection of R.C. 2505.02. *See Medspace, Inc.*, 2023-Ohio-4552, at ¶ 22 (noting that "because the order grants a provisional remedy (a preliminary injunction, see R.C. 2505.02(A)(3)), the relevant subsection of R.C. 2505.02 at issue is R.C. 2505.02(B)(4)"). Regardless, the preliminary injunction order does not satisfy the requirements of R.C. 2505.02(B)(2).

{¶ 30} R.C. 2505.02(B)(2) defines a final order as one that "affects a substantial right made in a special proceeding or upon a summary application in an action after judgment." The statute defines a "special proceeding" as an "action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C. 2505.02(A)(2). *See Polikoff v. Adam*, 67 Ohio St.3d 100 (1993), syllabus (explaining orders entered "in actions that were recognized at common law or in equity and were not specially created by statute are not orders entered in special proceedings pursuant to R.C. 2505.02"). For example, actions for divorce, workers' compensation, and declaratory judgment constitute special proceedings, because these actions did not exist at common law or equity and were specially created by statute. *See State ex rel. Papp v. James*, 1994-Ohio-86, ¶ 24; *Myers v. Toledo*, 2006-Ohio-4353, ¶ 15; *Gen. Acc. Ins. Co.* at 22.

{¶ 31} The Lager defendants claim the present action was a special proceeding because the state "invoke[d] R.C. 117.42 and R.C. 2923.34" in the amended complaint. (May 30, 2025 Memo Contra at 15.) To determine whether an action constitutes a special proceeding, " 'courts need look only at the underlying action.' " *Stevens v. Ackman*, 2001-

Ohio-249, ¶ 28, quoting *Walters v. The Enrichment Ctr. of Wishing Well, Inc.*, 1997-Ohio-232, ¶ 14. When a court considers whether a particular statute specially creates a proceeding, "the court must pointedly examine the basic core of the statute at issue" and ask whether the "particular statute actually does create a special proceeding, or whether the statute merely supplies details within the structure of an ordinary action." *Stevens* at ¶ 33. R.C. 117.42 and 2923.34 authorize civil actions for damages in different scenarios. *See* R.C. 117.42 (providing that, upon the request of the state auditor, the Attorney General "may file and prosecute to judgment or decree appropriate actions to prevent the unlawful expenditures of public funds . . . and enforce generally the laws relating to the expenditure of public funds," and stating that "[a]ll sums collected as a result of any action taken under this chapter shall be placed in the treasury of the appropriate public office"); R.C. 2923.34 (providing that any person who is "injured or threatened with injury" by a violation of R.C. 2923.32, defining the crime of engaging in a pattern of corrupt activity, "may institute a civil proceeding in an appropriate court seeking relief from any person whose conduct violated or allegedly violated [R.C.] 2923.32").

{¶ 32} Thus, at their core, these statutes simply supply the details within the structure of an ordinary civil action for damages. Indeed, the underlying action in the present case was a civil action to obtain damages resulting, predominately, from a breach of fiduciary duties. *See Stevens* at ¶ 30, 35 (observing that although the case "include[d] claims for wrongful death and survival claims," the case was "an ordinary civil action seeking damages for purposes of R.C. 2505.02," and a "civil suit for damages [was] . . . of course [] known at common law"); *Nejman v. Charney*, 2015-Ohio-4087, ¶ 23 (8th Dist.) (observing that a claim for "breach of fiduciary duty [was a] common law action[]," and therefore did not amount to a "special proceeding" for purposes of R.C. 2505.02(B)(2)). As such, the underlying action was not a special proceeding.

{¶ 33} The Lager defendants also fail to demonstrate how the preliminary injunction order affected their substantial rights. R.C. 2505.02(A)(1) defines a substantial right as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." "[A]n order affects a substantial right for purposes of R.C. 2505.02(B)(2) only if 'in the absence of immediate review of the order [the appellant] will be denied effective relief in the future.' " *Thomasson*

*v. Thomasson*, 2018-Ohio-2417, ¶ 10, quoting *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63 (1993). *Accord Jezerinac v. Dioun*, 2023-Ohio-2882, ¶ 30 (10th Dist.) (stating that "[a]n order affects a substantial right only if denying the opportunity for review would preclude the possibility of future relief for the parties").

{¶ 34} As noted, the preliminary injunction order only temporarily restricts the Lager defendants' ability to dispose of their assets. The preliminary injunction order did not take any assets away from the Lager defendants, and the Lager defendants do not claim that their assets are likely to suffer irreparable injury while the asset freeze preliminary injunction is in place. *Compare Cornell v. Shain*, 2021-Ohio-2094, ¶ 32 (1st Dist.), quoting *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975) (observing that "[a] court's prejudgment order that takes a party's property during the pendency of litigation, even for safekeeping, risks 'the probability of irreparable injury' to the owner of the property"). The Lager defendants can obtain a meaningful review of the preliminary injunction order following the final judgment in the present case. As such, the preliminary injunction order was not a final order under R.C. 2505.02(B)(2).

## III. Conclusion

{¶ 35} Because the preliminary injunction order does not satisfy any subsection of R.C. 2505.02(B), the order was not a final order. Absent a final order, we lack jurisdiction over the present appeal. Although the Lager defendants amended their notice of appeal to include the trial court's May 6, 2022 summary judgment decision, they recognize the "summary-judgment decision, standing alone, was not final." (Memo Contra at 17.) Because the preliminary injunction order was not a final order, there was no final order for the interlocutory summary judgment decision to merge into. *See MD Acquisition, L.L.C. v. Myers*, 2013-Ohio-3825, ¶ 26 (10th Dist.).

{¶ 36} Based on the foregoing, we grant the state's motion and dismiss the present appeal for lack of a final, appealable order.

*Appeal dismissed.*

MENTEL and LELAND, JJ., concur.

———————————